IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY WILSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KENNETH CAMERON, et al. | : | NO. 14-3254 |

ORDER

AND NOW, this 9th day of September, 2015, upon consideration of petitioner Gary Wilson's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed on the correct forms (docket entry #3), our July 22, 2014 Order referring this matter to the Hon. Elizabeth T. Hey for a report and recommendation, Judge Hey's report and recommendation (docket entry #26), petitioner's objections and addendum thereto, and the Court finding that:

(a) After petitioner Gary Wilson sought relief under 28 U.S.C. § 2254, we referred this case to the Hon. Elizabeth T. Hey for a report and recommendation;

(b) In his pro se petition, Wilson alleges that state correctional officials have impermissibly recalculated his sentence, thereby unconstitutionally keeping him in prison past the maximum sentence date given to him at his original sentencing, Petition at 5, 9;

(c) The report and recommendation ("R&R") concludes that Wilson's claims are both unexhausted and procedurally defaulted, that he fails to establish that he is entitled to review of his procedurally defaulted claims, and recommends that the petition be dismissed with prejudice and that no certificate of appealability issue, R&R at 7, 9-10, 11;

(d)     Wilson timely filed objections[1] to the report and recommendation, and we make de novo determinations of the portions of the report or specified proposed findings or recommendations to which he objects, see 28 U.S.C. § 636, mindful that we construe pro se litigants' pleadings liberally, Estelle v. Gamble, 429 U.S. 97, 106 (1976);

(e)     We briefly rehearse the factual and procedural history of this case, as drawn from the report and recommendation, which cited extensively to the state court record;

(f)     After pleading guilty to several burglary and robbery charges, Wilson was sentenced to an aggregate prison term of seven to twenty years (the "1989 sentences"), with an original effective date of sentence of March 23, 1989, making the maximum date March 23, 2009, R&R at 1-2;

(g)     On February 11, 1998, Wilson was paroled from the 1989 sentences and began serving a different sentence dating from 1990 in a different county, id. at 2;[2]

(h)     Wilson was paroled from that 1990 sentence on June 14, 1999, id.;

(i)     On November 15, 2000, the Pennsylvania Board of Probation and Parole ("Parole Board") revoked Wilson's parole and recommitted him as a technical violator to serve six months of backtime, leaving his maximum date on his 1989 sentences as March 23, 2009, id.;

---

[1] In his initial objections, Wilson averred that he had not received a complete copy of the report and recommendation. Objections at 1. We ordered the Clerk of Court to send him another copy and gave Wilson leave to file an addendum to his objections, provided that he (1) explained which pages of the report and recommendation he did not receive and (2) only submitted additional objections to the newly received portions of the report and recommendation. See Aug. 6, 2015 Order at ¶¶ 1-2 & n.1. Wilson complied, filing an addendum to his objections per the Court's instructions. See Addendum (filed Sept. 1, 2015).

[2] When a prisoner, while still confined, is paroled from one sentence to begin serving another, he is considered on "constructive parole" from the earlier sentence. Pagan v. Pennsylvania Bd. Prob. & Parole, 2009 WL 210488, *2 n.4 (E.D. Pa. Jan. 22, 2009) (Davis, J.) (citing Merritt v. Pennsylvania Bd. Prob. & Parole, 574 A.2d 597, 598 n.1 (Pa. 1990)).

(j) After granting Wilson parole on July 28, 2003, the Parole Board released him on September 30, 2003, id. at 3;

(k) On September 3, 2003, the Parole Board recalculated Wilson's maximum date to October 17, 2009, adding 208 days to his original March 23, 2009 maximum date, id.;

(l) Wilson was arrested on August 16, 2008 for various weapons and controlled substances offenses, and on January 6, 2009, the Parole Board issued an order detaining Wilson pending the disposition of those outstanding criminal charges, id.;

(m) Wilson was released on or about October 17, 2009, but on March 12, 2010, the Parole Board found him delinquent, id. at 4;

(n) On May 8, 2013, a jury convicted Wilson of possession of a prohibited firearm, arising from the charges for which he was arrested in August of 2008, and on July 19, 2013, Wilson was sentenced to two-and-a-half to five years' imprisonment, id.;

(o) As a result of his May 8, 2013 conviction, the Parole Board charged Wilson as a convicted parole violator, id.;

(p) After Wilson waived a revocation hearing, the Parole Board revoked his parole on November 6, 2013, sentenced him to serve twenty-four months' backtime, and recalculated his maximum date as March 31, 2021, id.;[3]

---

[3] When a parolee is recommitted for having committed a crime while on parole, he is not entitled to credit for any of the time spent on parole, including time spent on "constructive parole" in prison while serving another sentence. Pagan, 2015 WL 210488, *4; see also U.S. ex rel. Henderson v. Commonwealth of Pennsylvania, 287 F. Supp. 372, 373 (W.D. Pa. June 13, 1968) (Rosenberg, J.) (explaining that the "liberty" referred to with respect to time credit for "liberty on parole" means "liberty from the confinement on the particular sentence," not "liberty from all confinement").

(q) On December 9, 2013, Wilson filed an administrative remedies form challenging the Parole Board's calculations of both his new maximum date and his re-parole eligibility date, id.;

(r) On July 17, 2014, the Parole Board responded to Wilson's petition for administrative review, explained the sentence calculations, and affirmed the Parole Board's decision of November of 2013, id. at 5;

(s) On June 5, 2014, Wilson filed this petition challenging the two recalculations of his 1989 sentences – the first changing his maximum date from March 23, 2009 to October 17, 2009, and the second extending it by twelve years, id.;

(t) Although Wilson filed timely objections to the report and recommendation, and then an his objections do not speak to the gravamen of the report's conclusion that his claims are unexhausted and procedurally defaulted;

(u) Thus, while we briefly address Wilson's objections, we note at the outset that those objections do not disturb or challenge the report and recommendation's ultimate conclusion that his claims are procedurally defaulted, precluding us from addressing their merits;

(v) First, Wilson objects that it is the Department of Corrections' records staff, not the Parole Board, that revoked his time credit, Objections at 3;

(w) The report and recommendation is very careful to distinguish the actions of the Department of Corrections from the Parole Board, see, e.g., R&R at 3-4 (explaining that the Department of Corrections, in one instance, recalculated Wilson's sentence to reflect a credit adjustment from a different sentence Wilson received in 1989, and in another instance, the Parole Board detained Wilson on outstanding criminal charges and declared him delinquent);

4

    (x) The report and recommendation is also careful to point out that Wilson is challenging two separate recalculations of his sentence: the first on September 3, 2003, when the Parole Board notified Wilson that his maximum date had been changed from March 23, 2009 to October 17, 2009, and the second in November of 2013, when the maximum sentence was recalculated after a new conviction, resulting in the loss of credit for all time spent on parole and a recalculated maximum date of March 31, 2021, id. at 7;

    (y) Wilson fails to demonstrate the import of this distinction between the Department of Corrections and the Parole Board, and his objection is overruled;

    (z) Second, Wilson objects to the report and recommendation's factual statement that he was on parole from 1989 to 2000 and paroled again in 2003, Objections at 4;

    (aa) Wilson states rather that he "made parole 1999 to 2000 and was arrested on new criminal charges and for violation of the conditions of his parole. The new criminal charges were dismissed and at that point the Petitioner was committed as a technical parole violator." Id.;

    (bb) Wilson appears to be referring to the portion of the report and recommendation summarizing the Parole Board's explanation that Wilson "lost credit for his time on parole in 1989 through September 13, 2000, and his time when he was paroled in 2003." R&R at 11 n.13;

    (cc) Wilson's objections to the characterization of the factual circumstances of his parole do not affect the report and recommendation's analysis or conclusions, as this characterization is meant to reflect the Parole Board's position on how they calculated Wilson's time, and we further note that it is likely that the report and recommendation merely contains a typo regarding the year in which Wilson was paroled, which does not affect its analysis;

   (dd) We will therefore overrule this objection;

   (ee) Third, Wilson objects to the report and recommendation's note that the Parole Board's letter of July of 2014 does not address the time calculation from March 23, 2009 to October 17, 2009, Objections at 5;

   (ff) The report and recommendation explained that on September 3, 2003, the Parole Board recalculated Wilson's maximum date to October 17, 2009, adding 208 days to the March 23, 2009 maximum date based on the Department of Corrections' recalculation "to reflect a credit adjustment based on a different sentence Petitioner received in 1989." R&R at 3;

   (gg) The report and recommendation further explained that the "reason for the recalculation remains murky," but since the Parole Board "correctly argues that Wilson failed to properly challenge that recalculation and is procedurally barred from doing so at this point," the murkiness of those reasons is moot, id. at 3 n.4;

   (hh) The report and recommendation fully explains that because of Wilson's procedural default, the murkiness of the reasons for the recalculation are now moot, and we will therefore overrule this objection;

   (ii) Fourth, Wilson objects to page 13 of the report and recommendation stating that he "lost credit" while on parole, Objections at 6;

   (jj) There is no page 13 to the report and recommendation, though two separate footnotes explain that Wilson "lost credit" for time on parole as a result of his recommitment as a convicted parole violator, R&R at 4 n.7 & 11 n.13;

   (kk) As the report and recommendation explains, pursuant to 61 Pa C.S. §§ 6138(a)(2) and 6138(c)(2), a technical parole violator is given credit for the time spent on parole, while a convicted parole violator is not, id. at 2 n.2;

(ll)    The report and recommendation also carefully explains that when Wilson's parole was revoked on November 15, 2000, he was recommitted as a technical parole violator to serve six months' backtime, meaning that his maximum date did not change, that he had to serve six months before he was again eligible for parole, and that he did not lose credit for the time served on parole, id. at 2 & n.3;

(mm)   The report and recommendation further explains that when the Parole Board revoked Wilson's parole on November 6, 2013, it was because Wilson was a convicted parole violator as a result of his May 8, 2013 conviction, meaning he lost credit for all the time he had spent on parole, id. at 4 & n.7;

(nn)    Wilson does not explain in his objections how these factual recitations are incorrect, but rather argues that "if" he did lose his time credit, he was entitled to due process, Objections at 7;

(oo)    Wilson's objection is non-responsive to the report and recommendation and does not explain to what additional process he was entitled given that he waived his revocation hearing;

(pp)    We will therefore overrule this objection;

(qq)    Fifth, Wilson challenges the statement on page 10 of the report and recommendation that he is challenging he validity of his sentence, Objections at 7;

(rr)    The report and recommendation concludes,

> Wilson challenges the recalculation of his sentence on two occasions by the Parole Board. He failed to properly appeal the Parole Board's action with respect to either recalculation. Thus, his claims are unexhausted. Because the time for filing a proper appeal in the Commonwealth Court has expired, his claims are procedurally default and Wilson has provided no basis to excuse his default.

R&R at 10-11;

   (ss) Wilson objects that "The amended sentence by the DOC after March 23, 2009 was an illegal sentence as Petitioner has claimed from his original petition [Doc. 1] that he is innocent because the DOC was prohibited from revoking time credit without notice or hearing," Objections at 8;

   (tt) As Wilson objects to the report and recommendation's characterization of his claims as challenging his sentence, but then admits in his objection that he is challenging his sentence, we will overrule his objection;

   (uu) Sixth, Wilson objects to the report and recommendation's conclusion that he is challenging the recalculation of his sentence by the Parole Board, Objections at 7;

   (vv) Wilson argues that his claims "are with the records staff at SCI Huntingdon" and continues to take issue with the calculation of his time credit, id.;

   (ww) As explained above, Wilson is challenging his sentence and the relationship between the Parole Board and the Department of Corrections with respect to time calculations is irrelevant to Wilson's claims, and his objection is therefore overruled;

   (xx) In his Addendum, Wilson averred that he had not received pages 1-5 and 7 of the report and recommendation, see Addendum at 2, and so we now consider his objections to those portions of the report and recommendation he only recently received;

   (yy) First, Wilson objects to the report and recommendation's failure to interrogate why his maximum date was recalculated on September 3, 2003, adding 208 days to his original maximum date, Addendum at 3;

    (zz) But as explained above, the reasons why the Parole Board recalculated his maximum date are moot because he failed to properly challenge that recalculation -- which took place over ten years ago -- and he is procedurally barred from doing so at this point;

    (aaa) We will therefore overrule this objection;

    (bbb) Second, Wilson objects that the report and recommendation failed to consider that the adjustment of his maximum date without notice or hearing is a due process violation, Addendum at 4;

    (ccc) The report and recommendation explained that Wilson's challenge to this first recalculation of his maximum date is likely untimely and clearly procedurally barred, R&R at 7 n. 10;

    (ddd) Further, the report and recommendation elaborated that the Parole Board mailed Wilson a notice of its decision on September 19, 2003, though Wilson implied in his Petition and Reply that he was not notified of this recalculation until 2008, id.;

    (eee) Nonetheless, as the report and recommendation explained, Wilson failed to file his habeas petition until June of 2014, more than six years after he says he learned about his recalculation, id.;

    (fff) As the report and recommendation fully addressed Wilson's argument on this point, and Wilson's new objections do not disturb the report and recommendation's reasoning, we will overrule this objection;

    (ggg) Third, Wilson objects that the report and recommendation, after determining that his challenge to the 2003 recalculation was untimely, did not continue to consider his Fourteenth Amendment claims, Addendum at 5-7;

9

   (hhh) As explained previously, once the report and recommendation determined that Wilson's challenge was procedurally defaulted, it did not need to consider the merits of his claim, and as we agree that his claim is procedurally defaulted, we also do not consider the merits of this claim, and overrule this objection;

   (iii) Fourth, Wilson objects to the portion of the report and recommendation stating that Wilson is not entitled to review of his claims, arguing that it would be a miscarriage of justice not to review them, Addendum at 7;

   (jjj) To demonstrate a fundamental miscarriage of justice sufficient to excuse a procedural default, a petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," as demonstrated by "a colorable showing of factual innocence," Schlup v. Delo, 513 U.S. 298, 327 (1995) and McCleskey v. Zant, 499 U.S. 467, 495 (1991);

   (kkk) Wilson continues to object to how and when his sentence was recalculated, but had not made a colorable showing of factual innocence or even argued that a constitutional violation resulted in his wrongful conviction, and we will therefore overrule this objection;

   (lll) Fifth, Wilson objects that the report and recommendation never considered that Wilson's recalculation means that Wilson was punished twice for the same offense, in violation of the prohibition against double jeopardy, Addendum at 8;

   (mmm)The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal or conviction and multiple punishments for the same offense, Brown v. Ohio, 432 U.S. 161, 165 (1977);

(nnn)   As explained, Wilson's claims are unexhausted and procedurally defaulted, he has not established cause for his default or prejudice therefrom, and has he not demonstrated the predicates to applying the miscarriage of justice exception;

(ooo)   We will therefore overrule this objection;

(ppp)   Notwithstanding Wilson's objections, all of which we have overruled, the gravamen of the report and recommendation remains that Wilson's challenges to the recalculation of his sentence are unexhausted and procedurally defaulted, and Wilson does not challenge any aspect of the analysis or conclusions germane to that point;

(qqq)   We find the portions of the report and recommendation explaining Wilson's failure to exhaust, procedural default, and lack of entitlement to relief from his procedural default to be thorough and well-reasoned,[4] and we will adopt them; and

---

[4] As explained in the report and recommendation, to properly exhaust a claim involving a sentence calculation by the Parole Board, a petitioner must first seek administrative review with the Parole Board. 37 Pa. Code § 73.1(a). After the Parole Board renders its final decision, a petitioner must seek review in the Commonwealth Court. 42 Pa. C.S.A. § 763(a); Bronson v. Pennsylvania Bd. Prob. & Parole, 421 A.2d 1021, 1025 (Pa. 1980). If unsuccessful in Commonwealth Court, a petitioner must seek further review in the Pennsylvania Supreme Court before bringing a federal habeas action. Williams v. Wynder, 232 F. App'x 177, 181 (3d Cir. 2007) (non-precedential); see also, e.g., Moon v. Wetzel, 2015 WL 519121, *3 (W.D. Pa. Feb. 9, 2015) (Bissoon, J.) (explaining the process by which a state prisoner must exhaust a federal constitutional claim challenging the Parole Board's actions); Bieros v. Bickell, 2014 WL 2115222, *2 (M.D. Pa. May 21, 2014) (Conner, C.J.) (same); Pagan, 2009 WL 210488, *3 (same). Petitioners generally have thirty days to file their appeals at these various stages of review. See, e.g., 37 Pa. Code § 73.1(a)-(b); Pa. R.A.P. 1512(a)(1).

With respect to the September 3, 2003 recalculation of Wilson's sentence, it is not clear if Wilson filed any administrative appeal at all. R&R at 8. Wilson filed a petition in the Commonwealth Court in December of 2008, but the petition was dismissed because he failed to comply with the Commonwealth Court's October 28, 2013 Order that he name a proper respondent, properly serve the respondent, and remit the filing fee or in forma pauperis form. Id. (citing to the state court record). With respect to the Parole Board's recommitment of Wilson in November of 2013 and its recalculation of his sentence at that time, Wilson filed an administrative appeal on December 9, 2013. Id. The Parole Board responded on July 17, 2014, denying his appeal and explaining the recalculation of his sentence. Id. Wilson did not file a petition for review in the Commonwealth Court following that decision. Id.

11

    (rrr)  As jurists of reason would not debate the correctness of this procedural ruling, see <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), we will decline to issue a certificate of appealability.

    It is hereby ORDERED that:

    1.  Judge Hey's report and recommendation (docket entry #26) is APPROVED AND ADOPTED;

    2.  Petitioner's <u>pro</u> <u>se</u> petition for writ of <u>habeas</u> <u>corpus</u> (docket entry #3) is DENIED WITH PREJUDICE;

    3.  We DECLINE to issue a certificate of appealability; and

    4.  The Clerk of Court shall CLOSE this case statistically.

                      BY THE COURT:

                        /s/ Stewart Dalzell, J.

---

  Wilson is therefore well outside the mandated period for appeal. He has failed to exhaust his claims, but no longer has any avenue in the state courts to exhaust them, resulting in a procedural default. <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991) (explaining the application of procedural default for unexhausted claims). Wilson did not offer any reasons for his procedural default and has therefore failed to demonstrate his entitlement to any of the mechanisms by which we may overlook a procedural default . <u>Werts v. Vaughn</u>, 228 F.3d 178, 192 (3d Cir. 2000) (cause and prejudice and miscarriage of justice); <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995) (actual innocence).